**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-05-766 (1) |
| | § | C.A. No. 06-292 |
| MARIO ALVARADO, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DISMISSING MOTION TO VACATE,**
**SET ASIDE OR CORRECT SENTENCE**
**AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Mario Alvarado's ("Alvarado") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 19),[1] which was received by the Clerk on July 3, 2006.  The Court ordered the government to respond, and the government filed an answer and motion to dismiss on December 21, 2006.  (D.E. 23, 24.)  Alvarado had until January 23, 2007 to file a reply (D.E. 21); to date, no reply has been filed.  For the reasons set forth herein, the Court GRANTS the government's motion to dismiss and DISMISSES Alvarado's motion.  Additionally, the Court DENIES Alvarado a Certificate of Appealability.

**I.  JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1]  Docket entry references are to the criminal case, Cr. C-05-766.

## II.  FACTS AND PROCEEDINGS

**A.      Summary of the Offense[2]**

Alvarado was the driver and registered owner of a vehicle that entered the Border Patrol checkpoint south of Sarita, Texas on December 7, 2005.  With Alvarado was his spouse, Marina Alvarado, and two minor children, ages 4 and 1.  Prior to contact with Alvarado, agents observed that as Alvarado pulled up to the inspection area, he avoided eye contact and took a deep breath. A canine alerted to the lower rear portion of the vehicle.  Alvarado was referred to the secondary inspection area.

Once in the secondary inspection area, a canine alerted to the gas tank of the vehicle. Utilizing a fiber optic scope, agents were able to look inside the gas tank, where they observed several bundles.  Upon removing the gas tank, agents observed a "trap door" located on the top of the gas tank.  Removal of the "trap door" revealed vacuum sealed bundles inside.  A total of 25 bundles of cocaine were removed from the gas tank, with a net weight of 25.04 kilograms and 81% purity.  Alvarado and his spouse were arrested and both declined to make a statement without an attorney.

Record checks revealed that the vehicle had entered the United States from Mexico at the Los Indios Port of Entry on December 7, 2005, prior to being stopped at the checkpoint.

**B.      Criminal Proceedings**

On December 28, 2005, Alvarado was charged in a single-count indictment with possession with intent to distribute approximately 29 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (D.E. 6.)  On January 30, 2006, Alvarado pleaded guilty to the

---

[2] Information about the offense is from Alvarado's Presentence Investigation Report ("PSR") at ¶¶ 4-5.

indictment, pursuant to a written plea agreement.  (D.E. 9; see also Minute Entry dated 1/30/2006.)
In exchange for his guilty plea to the sole count in the indictment and his waiver of appellate and
§ 2255 rights (discussed below), the government agreed to recommend that he receive the maximum
credit for acceptance of responsibility and to recommend a sentence at the lowest end of the
guideline range. (D.E. 9.)

The plea agreement contained a voluntary waiver of Alvarado's right to appeal and to file
a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the
> sentence imposed.  Defendant is aware that Title 18 U.S.C. § 3742
> affords a defendant the right to appeal the sentence imposed.  The
> defendant waives the right to appeal the sentence imposed or the
> manner in which it was determined.  The defendant may appeal only
> (a) a sentence imposed above the statutory maximum; or (b) an
> upward departure from the Sentencing Guidelines which had not been
> requested by the United States, as set forth in 18 U.S.C. § 3742(b).
> Additionally, the defendant is aware that Title 28, U.S.C. § 2255,
> affords the right to contest or "collaterally attack" a conviction or
> sentence after the conviction or sentence has become final.  The
> defendant waives the right to contest his/her conviction or sentence
> by means of any post-conviction proceeding.

(D.E. 9 at ¶ 7 (emphasis in original).)

The Court sentenced Alvarado on April 28, 2006 to 87 months in the custody of the Bureau
of Prisons, to be followed by a five-year term of supervised release, and imposed a $500 fine and
a $100 special assessment. (D.E. 22, Sentencing Transcript ("S. Tr.") at 6-7; D.E. 17.)  Judgment
of conviction and sentence was entered May 8, 2006. (D.E. 17.)  Consistent with his waiver of
appellate rights, Alvarado did not appeal.  He filed the instant § 2255 motion on July 3, 2006.  It is
timely.

### III.  MOVANT'S ALLEGATIONS

In his motion, Alvarado asserts two grounds for relief.  First, he asks the Court to impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence.  In particular, he claims that he meets the criteria in U.S.S.G. § 5C1.2(a) and thus that he should have been sentenced at a lower offense level.  Second, he asks for an additional downward departure of not more than four levels, pursuant to an early disposition program, relying on U.S.S.G. § 5K3.1.

In its response, the government argues that Alvarado's motion is barred in its entirety because of his waiver of § 2255 rights in his written plea agreement.  (D.E. 24 at 4.)  It seeks dismissal of the § 2255 motion on the basis of his waiver.  Alternatively, the government moves to dismiss his § 2255 motion because he has failed to state a claim entitling him to relief.  (D.E. 24 at 9-10.)

For the reasons set forth herein, the Court declines to hold that Alvarado's motion is barred by his waiver.  Instead, the Court determines that Alvarado is not entitled to relief on either of his claims.

## IV.  DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage

of justice." <u>United States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge

may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593

(1982).

**B.      Waiver of § 2255 Rights**

As previously noted, the government argues that Alvarado's waiver of § 2255 rights

precludes consideration of his motion.  The written plea agreement contained a waiver of § 2255

rights, and was in the same paragraph as his waiver of appellate rights.  (D.E. 9 at ¶ 7; <u>see also</u> <u>supra</u>

at 3) (quoting waiver provision).)

Moreover, in response to the Court's questioning of him at the rearraignment, Alvarado

testified that he signed the written plea agreement voluntarily, that he read it first, that he understood

it, and that no one had offered him anything to plead guilty other than what was in the agreement.

(D.E. 20, Rearraignment Transcript ("R. Tr.") at 13-14.)  The Court further ensured that Alvarado

understood he was waiving his right to appeal:

> THE COURT: I believe that there are waivers of appeal, if I heard
> that correctly, on all of these plea agreements.  That's somewhat
> typical.  Do each of you understand that you have waived the right to
> appeal except under limited circumstances that are set forth in your
> plea agreement?  Do each of you understand that?
>     (All defendants answer yes.)
>
> THE COURT: Did you discuss that waiver of appeal with your
> lawyer before you signed your plea agreement?
>     (All defendants answer yes.)

(R. Tr. at 17.)  Based on the foregoing, it is clear that Alvarado's waiver of ***appellate rights*** was

knowing and voluntary.  <u>United States v. Portillo</u>, 18 F.3d 290, 292 (5th Cir. 1994) ("To be valid,

a defendant's waiver of his right to appeal must be informed and voluntary.  A defendant must know

that he had a 'right to appeal his sentence and that he was giving up that right.'")(citation omitted);

United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing defendant's voluntary and knowing waiver of appeal rights).

Additionally, in summarizing the plea agreement, the prosecutor included the following statement: "He is told that he is waiving his rights to appeal by signing this agreement, including his rights under Title 18, Section 2255."[3] (R. Tr. at 4.)  After the summary, the Court inquired:

> THE COURT: Did everyone hear what he said about your plea agreement?
> (All defendant answer yes.)
>
> THE COURT: "Is that your understanding?"
> (All defendant answer yes.)

(R. Tr. at 5.)

The Court itself did not explicitly refer to the waiver of § 2255 rights, however, nor did it specifically ask Alvarado about the portion of the waiver in which Alvarado waived his right to § 2255 relief.  Cf. Fed.  R. Crim. P. R. 11(e)(1)(N) (requiring the Court to ensure the defendant understands any waivers of the right to appeal "or to collaterally attack the sentence.")

The Fifth Circuit has recently held that, where there is "no indication in the record" that the "ratification of the plea agreement was anything but knowing and voluntary" and where the defendant indicates that he had read and understood the plea agreement, which contained "an explicit unambiguous waiver of appeal," the waiver is enforceable.  McKinney, 406 F.3d at 746. In so doing, it relied upon United States v. Portillo, 18 F.3d 290 (5th Cir. 1994), an earlier Fifth Circuit case.  The Portillo court held that if the record of the Rule 11 hearing "clearly indicates" the defendant has understood and read his plea agreement, the defendant's appellate waiver was enforceable, "regardless of whether the court specifically admonished him concerning the waiver

---

[3]  The prosecutor obviously misspoke in referencing Title 18, instead of Title 28.

6

of appeal." Portillo, 18 F.3d at 293. Certainly, the holding of Portillo supports the conclusion that Alvarado's waiver is valid and enforceable.

Portillo, however, was decided before the effective date of the 1999 Amendments to Rule 11, Fed. R. Crim. P., which amended Rule 11 to include the requirement that the court, prior to accepting a guilty plea, "must inform the defendant of, and determine that the defendant understands,  ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N); see also 1999 Adv. Comm. Notes to Fed. R. Crim. P. 11. Thus, the portion of Portillo that says it is irrelevant whether the Court has questioned the defendant about the appellate waiver is called into question by the amendment to Rule 11.

In McKinney, the rearraignment was governed by the version of Rule 11 that included the 1999 Amendments, but the opinion there is silent as to whether there was a "specific admonishment" by the judge regarding the appellate waiver in that case. Accordingly, McKinney does not squarely address whether, in a case governed by the amended Rule 11, there must be a specific admonishment by the court in order for a waiver of appellate rights or collateral review rights to be enforceable. Additionally, the Court has been able to locate only unpublished decisions that address the issue. See, e.g. United States v. Hernandez-Flores, 155 Fed. Appx. 745 (5th Cir. 2005) (refusing to enforce waiver of appellate rights were magistrate failed to comply with Fed. R. Crim. P. 11(b)(1)(N)); United States v. Navarrette, 152 Fed. Appx. 329 (5th Cir. 2005) (relying on Rule 11(b)(1)(N) and holding that the defendant's waiver was not knowing and voluntary because the magistrate judge inaccurately described the waiver provision at the rearraignment).

In light of this background, and in recognition of the fact that there was a lack of technical compliance with Rule 11(e)(1)(N) in this case as to Alvarado's waiver of § 2255 rights, the Court

will address Alvarado's claims on their merits, rather than dismissing them on the basis of the waiver.[4]

**C.    Alvarado's Claims**

Both of Alvarado's claims are essentially claims that the Court erred in its application of the sentencing guidelines.  To the extent that he is questioning the Court's application of the guidelines, his claims are not cognizable here.  <u>United States v. Williamson</u>, 183 F.3d 458, 462 (5th Cir. 1999) (claims that the sentencing guidelines were misapplied are not cognizable in § 2255 motion).  Moreover, even if they were properly before the Court, Alvarado's claims fail on their merits, as discussed herein.

**1.    Claim That He Should Have Been Given A Lesser Offense Level Pursuant to U.S.S.G. § 5C1.2(a).**

Alvarado first claims that he should have been given a lesser offense level pursuant to U.S.S.G. § 5C1.2(a).  This provision, the so-called "safety valve," allows the court to sentence certain defendants without regard to the mandatory statutory minimum.  U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f).   As previously noted, Alvarado was sentenced below the statutory minimum for his offense, and thus was given the benefit of the safety valve.  (S. Tr. at 3-4; <u>compare</u> <u>id.</u> with PSR at ¶ 34 (indicating that, without safety valve relief, Alvarado's guideline range would have been 120 to 135 months).)  Because Alvarado was in fact already given the relief he now seeks, his first claim has no merit.

**2.    Claim That He Should Have Received An Additional Downward Departure Pursuant to An Early Disposition Program.**

In his second claim, Alvarado alleges that he should have been given an additional downward departure for pleading guilty early in the criminal proceedings.  In light of Alvarado's

---

[4]  Accordingly, the Court makes no ruling herein on the enforceability of Alvarado's § 2255 waiver.

reference in this claim to U.S.S.G. § 5K3.1, the Court presumes he is referring to a type of program that allows certain defendants to plead guilty and to waive certain rights very early in the criminal process, in exchange for a motion for downward departure pursuant to U.S.S.G. § 5K3.1.

Such "fast track" or "early disposition" programs were first approved by Congress in 2003 as part of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act ("PROTECT ACT"). Section 401(m)(2)(B) of the PROTECT Act instructed the United States Sentencing Commission to create a policy statement authorizing a downward departure "pursuant to an early disposition program authorized by the Attorney General." Consequently, the Sentencing Commission adopted U.S.S.G. § 5K3.1, which provides that, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." U.S.S.G. § 5K3.1.

Attorney General Ashcroft formally created the fast-track program through a memorandum dated September 22, 2003 and authorized such programs in certain districts. According to Ashcroft, the programs "are based on the premise that a defendant who promptly agrees to participate in such a program has saved the government significant and scarce resources that can be used in prosecuting other defendants and has demonstrated an acceptance of responsibility above and beyond what is already taken into account by the adjustments contained in U.S.S.G. § 3E1.1." September 22, 2003 Memorandum from Attorney General Ashcroft on Department Principles for Implementing an Expedited Disposition of Fast-Track Prosecution Program to All United States Attorneys, reprinted in 16 Fed. Sent. R. 134 (2003) ("Ashcroft Memo"). Once authorization has been granted to a specific district, the district may implement the program in a manner deemed appropriate by its United States Attorney, subject to certain restrictions. Id.

The United States Attorney for the Southern District of Texas has received approval to implement such a program in this District.  See United States v. Mejia, 461 F.3d 158, 161 (2d Cir. 2006) (noting that 13 of 94 federal districts have "early disposition" or "fast-track" programs for illegal reentry cases, including the Southern District of Texas).[5]  It is the Court's understanding that the United States Attorney for the Southern District of Texas offers the program in other divisions within this District for certain types of cases, but it does not offer it in the Corpus Christi division. Alvarado has not presented any evidence showing that the program has been offered in any cases filed in the Corpus Christi division.  Significantly, moreover, the downward departure allowed by U.S.S.G. § 5K3.1 requires a motion **by the government** and no such motion was ever made in this case.

In short, Alvarado has not provided any evidence that an early disposition program was available to him or that he could have received any benefit from the program.  Accordingly, no error has been shown, and Alvarado's second claim does not entitle him to relief.  Because neither of his claims entitle him to relief, the government's motion to dismiss (D.E. 24) is GRANTED and Alvarado's § 2255 motion (D.E. 19) is DENIED.

**D.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Alvarado has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898

---

[5]  See also October 29, 2004 Memorandum from James B. Comey, Deputy Att'y Gen., to U.S. Attorneys on Authorization of Early Disposition Programs (2004), available at http://sentencing.typepad.com/sentencing_law_and_policy/files/61005_govt_ opposition_to_sg_variance_due_to_fasttrack.pdf (labeled as "Government's Exhibit 2") (giving continued authorization for fast-track program in the Southern District of Texas for illegal reentry cases, transporting or harboring of illegal alien cases, and, in the Laredo Division, for drug cases arising along the border).

(5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right **and** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Alvarado's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Alvarado cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find this

11

Court's procedural rulings debatable.  Accordingly, Alvarado is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the above-stated reasons, the government's motion to dismiss (D.E. 24) is GRANTED and Alvarado's motion under 28 U.S.C. § 2255 (D.E. 19) is DISMISSED.  The Court also DENIES Alvarado a Certificate of Appealability.

It is so ORDERED.

Signed this 3rd day of April, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

12